GARDNER VS UNITED STATES.

Opinion delivered October 19, 1904.

1. *Removal of Cause—Record—Mistake in Date.*

   Where, after indictment, a change of venue is taken and the record of the proceedings in the first court, when filed in the court to which change is taken, includes in the heading relative to the selection of the grand jury, a date later than that shown in the order itself, and later than the date of filing of the record in the court of trial, an error is apparent and the date included in the order will control, it being a part of the record, the other being a statement of the clerk.

2. *Removal of Cause—Imperfect Record—Presumption of Correctness.*

   Sec. 2204 Mansf. Dig. (1547 Ind. Ter. Stat.) provides the duties of the clerk in regard to the record, upon a removal of a cause to another court. The presumption is that the clerk performed his duty and that the record is full and complete, until the contrary is made to appear.

3. *Removal of Cause—Imperfect Record—Waiver—Non-Prejudicial Error.*

   Where, upon removal of a cause, the record is imperfect in several particulars and defendant obtains certiorari correcting same in one particular only and goes to trial without further objection, and when the missing portion of the record was such as not to prejudice defendant by its absence, the error, if any, will not cause a reversal of the judgment

4. *Removal of Cause—Jurisdiction—Attacked in Motion for New Trial, Too Late.*

> Where the jurisdiction of the court to which a cause has been removed on change of venue is attacked in the motion for new trial for first time, on the ground of an imperfect record, it is too late, when the omission from the record cannot be prejudicial to defendant.

5. *Trial—Witness—Attendance not Compelled by Attachment When Ill.*

> It was not error for the court to refuse to issue an attachment for a witness who was sick and unable to attend court.

6. *Trial—Continuance—Absence of Evidence—Discretion of the Court.*

> The granting of a continuance is a matter within the discretion of the court and it is not such an abuse of this discretion as constitutes error to overrule a motion based on the absence of a witness whose testimony would have been cumulative and contradictory of im materia matters.

7. *Murder—Evidence—Conduct of Wife of Deceased, After Killing.*

> In a prosecution for murder it was not error to permit testimony to go to the jury as to conversations and conduct of deceased's wife after the killing, nor to admit testimony that the defendant and wife of deceased slept together at the latter's house, after the killing.

8. *Criminal Law—Arraignment—Sufficiency of Record.*

> Where the record discloses that on a certain day, reciting the convening of court, the number and title of the case, the designation of the offense, the defendant in open court after being formally arraigned upon the indictment in this cause says he is not guilty as charged therein and puts himself upon the country, this shows a sufficient and correct arraignment of the defendant.

9. *Terms of Court—Adjournment—Authority of Judge.*

> The judges of U. S. Courts in Indian Territory, for sickness or other sufficient reason have authority to cause the opening and adjournment of any regular term of court in his district until such reasonable time as he deems proper, under his general authority for fixing the time of holding courts in his district.

10.   *Terms of Court—Adjournment—Waiver of Objection.*

> One who submits himself to the jurisdiction of the court and is tried at a time other than during the regular legal session, without objection, waives any error, if any, in the matter of the jurisdiction of the court at such adjourned term.

11.   *Criminal Law—Jurisdiction—Locality of Crime—Judicial Districts.*

> The United States Court for the Central District in the Indian Territory is bound to take judicial notice of the date when a portion of the Choctaw Nation was placed in the Western District, and hence has no jurisdiction of a crime committed in that portion of the Choctaw Nation unless committed prior to the formation of the Western District; and, this jurisdictional fact must be shown by the evidence.

12.   *Criminal Law—Jurisdiction—Sufficiency of Evidence to Disclose.*

> In a prosecution for murder the evidence, *Held* to sufficiently show the jurisdictional facts of locality of crime and date.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Zack Gardner was convicted of murder, and appeals. Affirmed.

Appellant was indicted in the United States Court of the Central District of the Indian Territory, at Antlers, on November 14, 1901, charged with the crime of murder. After various adjournments of said court, on April 10, 1903, defendant presented his petition for a change of venue in the case to the District Judge in vacation, and the venue of the case was ordered changed to Durant for trial; and the cause was thereafter, and on November 10, 1903, called for trial, tried to a jury, and appellant convicted. Appellant moved the court in arrest of judgment and for a new trial, each of which motions were overruled, and appellant took a bill of exceptions, and appealed to this court.

*J. E. Whitehead,* for appellant.

*J. H. Wilkins,* U. S. Attorney.

GILL, J.   Appellant files 13 assignments of error.   In his first assignment of error, he complains that the clerk at Antlers failed to make out and transmit to the clerk at Durant a true and perfect transcript of the records and proceedings in the cause. In the second assignment, he complains that the record transmitted shows that the indictment was found by a grand jury at Antlers, impaneled the day after his trial began at Durant.   In the third assignment, he complains that the clerk at Antlers failed to include within the transcript a copy of the petition for change of venue, and a copy of the indictment found by the grand jury at Antlers.   We will examine these three assignments together.

The record shows that on September 24, 1903, there was filed in the office of the clerk of the court at Durant the following:

"United States of America, Indian Territory, Central District.   In the United States Court in the Indian Territory, Central District, at a term thereof begun and held at Antlers, in the Indian Territory, on the 11th day of November, A. D. 1903— present, the Honorable Wm. H. H. Clayton, judge of said court— the following order, among others, was made and entered of record, to wit:

" 'Grand Jury.   On this day comes the marshal of this district, and returns into court the lists of grand jurors and alternate grand jurors selected by the jury commissioners for the present term of this court, and, upon being called, the following persons answer to their names, to wit, John W. Sohner, William A. Trent, William D. Wilson, James W. Kirk, Chas. L. Prudhome. Thomas G. Frederick, Sylvester S. Wells, James C. Good-

join, John D. Wilson, William Fletcher, Duke W. Dailey, James Blackburn, William R. Hunt, William Stanley, John Woolery and James L. Hickman, making sixteen good and lawful men of the Central District of the Indian Territory, Antlers Division, who were duly selected, summoned, impaneled, sworn, and charged, and retired to enter upon the discharge of their duties; John W. Sohner having been by the court appointed foreman, and the said sixteen men constituting the grand jury for the present term of court. Thursday, November 14, 1901, November Term, 1901.' "

Clearly, here is an error in the year, made either by the clerk of the court at Antlers or Durant. That is to say, it would be impossible for the clerk at Durant on September 24, 1903, to file in his court proceedings occurring in the court at Antlers on the 11th of November, 1903, which last date is subsequent to the date of the filing something like 50 days. We must hold that the date following the order, November 14, 1901, controls, it being a part of the record, rather than the statement in the heading of the order, it being merely the statement of the clerk, and not at all in any way a part of the order; nor can we see how the defendant was in any wise prejudiced, or his rights impaired, by reason of the mistake of the clerk in the year. The dates of the month and day correspond with the dates of the month and day in the date following the conclusion of the order. Especially is this true when the date of the report of the grand jury upon the indictment shows that the indictment was reported into court on November 14, 1901, and that on November 21, 1901, the case was continued until the following term of court.

By appellant's first assignment of error, he says that the clerk at Antlers failed to make and transmit to the clerk at Durant a true and perfect transcript of the record and proceedings in said cause; and he claims in the third assignment that the clerk failed to include within the transcript of the record of the pro-

ceedings a copy of the petition for change of venue, and a copy of the indictment found in this cause by the grand jury at Antlers. Section 2204 of Mansfield's Digest of the Laws of Arkansas (Ind. Ter. St. 1899, § 1547) provides: "Whenever any order shall be made for the removal of any cause under the foregoing provisions of this act, the clerk of court in which the same is pending shall make out a full transcript of the records and proceedings in the cause, including the order of removal, the petition therefor, if any, and the recognizance of the defendant, and of all witnesses, and shall immediately transmit the same, duly certified, under the seal of the court, to the clerk of the court to which the removal of the cause is ordered." The record in this case shows that there was a motion by appellant in this court to correct the record, which motion is as follows: "Now comes the defendant, and shows to the clerk and to the court that the record is imperfect, in this, to wit: that the clerk of the lower court, in making the transcript, failed and omitted to send up and include in said transcript a copy of the judgment of the court in this cause. Wherefore appellant prays that the clerk of this court issue a certiorari commanding the clerk of the inferior court to transmit to this court a true copy of the said judgment of the said lower court in this cause, and that same be filed in this court as a part of the record in this cause." The only complaint by appellant in that motion, as against this record, was that it was imperfect, in failing to send up and include in the transcript a copy of the judgment of the lower court. Certiorari issued upon the motion, and the imperfection was corrected by completion of the record as requested by appellant. It does not appear that the defendant objected to going to trial upon the record as it was before the court at Durant. There was no objection interposed to the jurisdiction of said court on any ground. It is true that the record fails to disclose a copy of defendant's petition for change of venue, as required by the foregoing section of Mansfield's Digest, but the record does dis-

close a copy of the indictment found by the grand jury at Antlers. The record does disclose that the change of venue was made by application to the judge in vacation upon the petition of the defendant for a change of venue, and the order was made by the judge in vacation, and was complied with by the judge in vacation, upon the request of the defendant. It does not appear that the petition of the defendant for change of venue made to the judge in vacation was ever filed or presented to the clerk of the court at Antlers. The section of Mansfield's Digest foregoing says that a copy of the petition for a change of venue, if any, shall be transmitted with the other papers, duly certified. But it does not appear that there was any petition for a change of venue ever presented to or filed by the clerk of the court at Antlers at all. The presumption is that the record is full and complete, and that the clerk has fully performed his duty, until the contrary is made to appear. Nor did the appellant challenge the jurisdiction of the court at Durant on this or any other ground. It is true that he raised this point in his motion for a new trial, but we must hold with the trial court that it was then too late to raise the question, unless the matter was in some wise prejudicial, and certainly the fact of the presence or absence of the petition for a change of venue, where the change of venue had been granted, and to be placed upon trial in the court where requested to be tried, cannot be prejudicial, or form any part of the actual proceedings in the trial; and we must hold, upon the first, second, and third assignments of error, against appellant.

Appellant's fourth assignment of error reads as follows: "Because the court erred in refusing to issue an attachment for witness Sissie Ward at the request of the appellant, to which the appellant at the time excepted." This must be considered in connection with the fifth assignment, which reads as follows: "Because the court erred in overruling appellant's motion for continuance filed in this cause on the 10th day of November,

1903, to which ruling of the court the appellant then and there excepted, and still excepts." This court has held repeatedly that, except where the trial court manifestly abuses its discretion in overruling a motion for a continuance, it is not error. We have examined the affidavit in support of the motion for continuance, and find from such affidavit that the witness Sissie Ward was sick and unable to attend court. It would then have been useless on the part of the trial court to issue an attachment for a witness who was sick and unable to attend court, and consequently we must hold that there was no error on the part of the court to refuse to issue the attachment for such sick witness, referred to in appellant's assignment No. 4; and we must hold that there was no error or abuse of discretion on the part of the trial court in overruling appellant's motion for a continuance, especially as the evidence of the witness was before the jury from other witnesses, and her testimony would have been merely cumulative, except upon some points of contradiction on immaterial matters.

We have carefully examined the evidence in the case, and do not think that there was any error in admitting the testimony of the witness named in assignment 7, or permitting the testimony to go to the jury as to certain conversations, conduct, and acts of Annie Jefferson after the killing, nor in permitting a witness to testify that Annie Jefferson, wife of the deceased man, and the appellant slept together at her house after the killing.

Appellant's tenth assignment of error is "that he was never legally arraigned upon the indictment, and because there was no legal record showing such an arraignment."

The record discloses with reference to the arraignment as follows: That on the 24th day of March, 1903, at a term of court held at Antlers, in the Indian Territory, the following order, among others, was made and entered of record:

"Wednesday, March 26th, 1902, March, 1902, Term. Court met pursuant to adjournment—present and presiding the Hon. W. H. H. Clayton, U. S. Judge for the Central District of the Indian Territory—whereupon the following proceedings were had, to wit:

"(512) United States vs Zack Gardner, Murder.   On this day come the defendant, Zack Gardner, and in open court, after being formally arraigned upon the indictment in this cause, says he is not guilty as charged therein, and puts himself upon the country."   We do not think there is any error in the arraignment of the defendant.

In the thirteenth assignment of error, appellant claims that there was no legal term of court held at Durant when he was tried.   The record discloses that the trial judge, on account of sickness, by written order, directed the marshal to open court on the 26th day of October, 1903, and adjourned court until Monday, the 2d day of November, 1903, which was accordingly done, and that the court, on the 2d day of November, 1903, pursuant to the adjournment made on the 26th day of October, 1903, was duly convened and opened in due form of law, and thereupon jurors were regularly selected, and on Wednesday, November 11, 1903, defendant was tried without objection on the part of defendant to the jurisdiction of the court, or to the competency of the jury. Defendant submitted himself to the jurisdiction of the court and to be tried by such jury; and, if there were any merit whatever in appellant's objection to the jurisdiction of the court on this ground, he must be held to have waived it, but we do not think there was any merit in the claim.   The trial court had full authority to direct the marshal to open and adjourn court to any certain time.   The defendant lost no rights, and was placed in no worse situation after the adjournment than he would have been, had the case proceeded on the regular first day of the term; and

we hold that the District Judge of the United States Court in Indian Territory, in case of sickness or other sufficient reason, has full authority to cause the United States marshal of his district to open and adjourn any regular term of court until such reasonable time as shall seem to such judge proper, and this under his general authority for fixing the times of holding courts in his particular district.

We will now consider assignment 6, which is as follows: "Because the verdict of the jury is contrary to the law and evidence." Appellant says there is no proof in the record to show when this crime was committed, and claims that the law with reference to the evidence is that the government must allege and prove that the crime was committed prior to the finding of the indictment, and he cites numerous Arkansas authorities to sustain this position. The proof offered with reference to the venue, so far as the transcript of evidence discloses, was that offered by the witness William Russell in answer to certain questions of the United States attorney, as follows: "Q. Where do you live? A. Hugo. Q. Did you live in that part of the Choctaw Nation at the time of the killing of Joe Jefferson? A. Yes, sir. * * * Q. Where you at the house of Joe Jefferson after he was killed, and before he was buried? A. Yes, sir. Q. Did you see his body after he was killed? A. Yes, sir; I did. * * * Q. What kind of a house was it, Mr. Russell, where he lived? A. Why, it was a log house. * * * Q. What time was it you were there after the killing? How soon after the killing? A. Why, it was between three and four o'clock the next evening. Q. The killing was done one night, and you were there the next afternoon? A. Yes, sir. * * * Q. That house was situated in the Choctaw Nation, was it? A. Yes, sir." The court below is bound to take judicial notice that a part of the Choctaw Nation is in the Western District. If this crime had been committed in

that portion of the Choctaw Nation comprising the Western District, the court below would have no jurisdiction of the crime, unless the crime was committed in the Choctaw Nation at a date prior to the formation of the Western District. If the crime was committed in the Choctaw Nation prior to the creation of the Western District, undoubtedly the court below would have had jurisdiction of the offense, but the date of killing must, in such case be a part of the evidence. The witness Reno McClure was asked the following question: "Q. Ask her if she lived near Bogy when Joe Jefferson was killed, in 1901? A. Yes; she said she lived near Bogy at that time, and she went to Cole's Ferry, and when she got there she says defendant was there. Q. Ask her when she went to Cole's Ferry? A. She don't remember what month it was. Q. Ask her where she stayed all night the night Joe Jefferson was killed? A. She was at Cole's Ferry that night." Annie Jefferson, wife of deceased, who was present at time of the killing, testified: "Q. You say you went down to Kiamichi county? A. I lived in Kiamichi county, the county where Joe was killed." Lina Gardner testified: "Q. Ask her where she lives? A. Across Bogy. Q. In the Choctaw Nation? A. Yes; sir. * * * Q. Ask her if she saw Joe (Jefferson) after he was killed? A. Yes, sir. Q. How far was her house from the place where he was killed? A. About a mile." The district attorney, upon the conclusion of the government's case in chief, offered in evidence the warrant of arrest of the defendant the second time. The warrant is dated May 25, 1901, and the return shows he was arrested on July 1, 1901. Annie Jefferson testified also on behalf of defendant as follows: "Q. How soon were you arrested after this killing? A. He was killed the 10th of May, and I was arrested the 30th of November. * * * Q. You were arrested when? A. 30th of November. The 30th of this month will be two years ago." The trial was in November, 1901. We think, from the above evidence, that it was sufficiently shown that the crime was

committed in the Central District of the Indian Territory prior to the division of said district, and that the venue was proved as laid, and that appellant's sixth assignment of error is not well taken. Without criticising, we would say that upon question of venue it is generally easy to prove same beyond question from the answers to a few pointed questions. Inattention to the matter in this case has made a laborious study of the evidence necessary, and while, from such study, we must hold that the venue is here proven beyond a reasonable doubt, how easy it would have been to have relieved both jury and court of the burden, had the matter been attended to at the proper time.

Finding no error in the record, the judgment of the court below will be affirmed.

RAYMOND, C. J., and TOWNSEND, J., concur.